IN THE

## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

23-1108

FLORENCE KOCHER

*Appellant,*

vs.

DENIS MCDONOUGH, SECRETARY, U.S. DEPARTMENT OF VETERANS
AFFAIRS

*Appellee.*

*On Appeal from the United States District Court for the Eastern District of
Pennsylvania's Order dated December 22, 2022 entered by Judge Savage in Case
No.: 21-921*

## BRIEF FOR APPELLANT

FAYE RIVA COHEN, ESQUIRE
LAW OFFICE OF FAYE RIVA COHEN, P.C.
2047 LOCUST STREET
P: 215-563-7776
F: 215-563-9996

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................. i

TABLE OF CITATIONS ............................................................... iii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ......................................................... 1

STATEMENT OF ISSUES ............................................................. 1

STATEMENT OF RELATED CASES AND PROCEEDINGS .................... 1

STATEMENT OF THE CASE ......................................................... 2

    A. Summary of Relevant Facts ................................................... 2

    B. Procedural History and Rulings Presented for Review ......................... 5

STATEMENT OF STANDARD OF REVIEW ................................................ 6

    A. Summary Judgment ................................................................ 6

    B. Discrimination .................................................................. 8

SUMMARY OF THE ARGUMENT ................................................... 10

ARGUMENT .............................................................................. 11

    A. Appellant's Unfair Low Ratings and Performance Counseling ............. 11

    B. Appellee's Refusal to Include Appellant's Self-Evaluation .................. 19

    C. Appellee's Inclusion of and Failure to Remove Appellant's
    Medical Diagnosis in her FY2018 ........................................... 21

CONCLUSION ........................................................................... 22

COMBINED CERTIFICATIONS ...................................................... 24

APPENDIX VOL. 1 ............................................................................... 26

# **TABLE OF CITATIONS**

**Page**

**Cases:**

*Adickes v. S. H. Kress & Co.,*
398 U.S. 144 (1970) ................................................................. 6– 7

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ................................................................. 6, 7

*Armbruster v. Unisys Corp.,*
32 F.3d 768 (3d Cir. 1994) ............................................................. 7

*Cardenas v. Massey,*
269 F.3d 251 (3d Cir. 2001) ......................................................... 10

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ..................................................................... 7

*Cridland v. Kmart Corp.,*
929 F. Supp. 2d 377 (E.D. Pa. 2013) ............................................ 6

*Davis v. Brown,*
Appeal No. 01941843 (1995) ......................................................... 8

*Fuentes v. Perskie,*
32 F.3d 759 (3d Cir. 1994) ......................................................... 8–9

*Gelover v. Lockheed Martin,*
971 F. Supp. 180 (E.D. Pa. 1997) ................................................. 8

*Giles v. Kearney,*
571 F.3d 318 (3d Cir. 2009) ......................................................... 6

*Harmon v. Runyon,*
Appeal No. 01963903 (1996) ....................................................... 10

*Iadimarco v. Runyan,*
190 F.3d 151 (3d Cir. 1999) ......................................................... 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ............................................................................ 7

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ............................................................................ 8

*Meredith v. Ashcroft*,
Appeal No. 01A14290 (2002) ............................................................ 10

*Pignataro v. Port Auth. Of N.Y. & N.J.*,
596 F.3d 265 (3d Cir. 2010) ............................................................... 7

*Plotkin v. Pacific Tel. & Tel. Co.*,
688 F.2d 1291 (9th Cir.1982) ............................................................ 1

*Saldana v. Kmart Corp.*,
260 F.3d 228 (3d Cir. 2001) ........................................................... 7–8

*Siegel Transfer, Inc. v. Carrier Express, Inc.*,
54 F.3d 1125 (3d Cir. 1995) ............................................................ 6–7

*Simens v. Reno*,
Appeal No. 1941293 (1996) ........................................................... 9–10

*Simpson v. Kay Jewelers, Div. of Sterling, Inc.*,
142 F.3d 639 (3d Cir. 1998) ............................................................ 8–9

*Tomasso v. Boeing Co.*,
445 F.3d 702 (3d Cir. 2006) ............................................................... 9

*Trafficante v. Metropolitan Life Ins. Co.*,
409 U.S. 205 (1972) .......................................................................... 10

*United States v. 107.9 Acre Parcel of Land in Warren Twp.*,
898 F.2d 396 (3d Cir. 1990) ............................................................... 7

**Statutes and Rules:**

28 U.S.C. § 1291 ................................................................................ 1
1

28 U.S.C. § 1331 ............................................................................. 1

28 U.S.C. § 1343(a)(4) .................................................................... 1

Fed. R. Civ. P. 56(a) ...................................................................... 6

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Appellant Florence Kocher [hereinafter "Appellant"] appeals the December 22, 2022 Order of the United States District Court for the Eastern District of Pennsylvania [hereinafter "District Court"] granting Appellee Denis McDonough, Secretary, United States Department of Veterans Affairs' [hereinafter "Appellee"] Motion for Summary Judgment and dismissing Appellant's claims. The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 1343(a)(4) because it arose under the laws of the United States and seeks redress for violations of federal law. This Honorable Court has appellate jurisdiction under 28 U.S.C. § 1291, because the matter is an appeal from a final decision of the District Court. *See, e.g., Plotkin v. Pacific Tel. & Tel. Co.*, 688 F.2d 1291, 1292 (9th Cir.1982).

## STATEMENT OF ISSUES

Did the District Court err in granting Appellee's Motion for Summary Judgment and dismissing Appellant's claims of discrimination on the basis of age and gender and retaliation. (See A001–A017, A037–A046, and A075–A090).

## STATEMENT OF RELATED CASES AND PROCEEDINGS

The instant proceeding has not been before this Honorable Court previously, and Appellant is not aware of any other case or proceeding that is in any way

related, completed, pending, or about to be presented to this Honorable Court or

any other court or agency, state or federal.

## STATEMENT OF THE CASE

### A. Summary of Relevant Facts

Appellant, a woman who was born in February 1956, has been employed

with Appellee as a Patient Safety Manager at the Corporal Michael J. Crescenz VA

Medical Center [hereinafter the "VAMC Philadelphia"] since October 2013. (See

A076).

During the time period relevant herein, Appellant had one (1) first-line and

two (2) second-line supervisors. Her first-line supervisor was Tracey Schoen, a

woman born in October 1970, who held the position of Quality Management

Supervisor and Risk Manager. Her second-line supervisors were, until July 2018,

Bruce Boxer, a man born in 1969, who held the position of Chief Quality Manager,

and from July 2018 through February 2019, Brian Gainsley, a man born in May

1977, who held the position of Interim Directory of Quality Management. (See

A076).

In or about July 2018, Appellant was issued her FY2017 proficiency report

[hereinafter the "FY2017"]. The FY2017, which covered a period from October

20, 2016 through October 20, 2017, was signed by Mr. Boxer, and was issued

much later than was typical, nine (9) months after the last date of the covered

period. Appellant's next proficiency report, discussed below, was issued less than four (4) months after the last date of the covered period. In the FY2017, Appellant was rated "Satisfactory" in the category "Nursing Practice." She was rated "Unsatisfactory" in the category "Interpersonal Relationships." Her overall rating was "Low Satisfactory." The FY2017's conclusions are at variance with Appellant being awarded the Gold Cornerstone Award for teamwork and outstanding compliance of all program requirements. (See A081).

On or about August 10, 2018, Ms. Schoen issued Appellant a Performance Improvement Plan [hereinafter the "PIP"]. Prior to the PIP, Appellant was completely unaware of any issues that Ms. Schoen had with her work. Appellant subsequently grieved the PIP through her union and, because of the said grievance, on or about November 1, 2018, Appellee terminated the PIP and amended it as a Performance Counseling. The November 2018 Performance Counseling [hereinafter the "Performance Counseling"] notified Appellant that her performance of the duties of her position as Patient Safety Manager was failing in at least one of the critical dimensions titled Practice, Professional Role, Collaboration/Collegiality, or Scientific Inquiry. The Counseling discussed Appellant's performance in four (4) critical dimensions of her position, detailing the standard for each dimension, Appellant's performance in each dimension, and actions Appellant should take to improve her performance. (See A078).

On or about January 11, 2019, Appellant was issued her FY2018 proficiency report [hereinafter the "FY2018"], signed by both Ms. Schoen and Mr. Gainsley. The FY2018 covered the period October 1, 2017 through September 28, 2018. In it, Appellant was rated "Satisfactory" in the category "Nursing Practice." She was rated "Unsatisfactory" in the category "Interpersonal Relationships." Her overall rating was "Low Satisfactory." The FY2018 quotes Ms. Schoen extensively, who portrays Appellant in an unfairly negative light, citing issues beyond Appellant's control and/or misconstruing neutral events in a manner which made them critical of Appellant. As with the FY2017, the FY2018's conclusions are at variance with Appellant being awarded the Gold Cornerstone Award for teamwork and outstanding compliance of all program requirements. (See A079).

Appellant provided a self-evaluation and requested that it be transposed onto an official template for inclusion with the FY2018. Mr. Gainsley refused to transpose the self-evaluation onto the official template, claiming that it was both too time intensive and not required. Appellant's self-evaluation was not initially attached to her FY2018, forcing Appellant to expend the effort of raising the issue so she could rebut and/or provide context regarding the unfairly negative FY2018. (See A079).

The FY2018 mentioned the fact that Appellant suffered a heart attack while at work at VAMC Philadelphia. Appellant did not authorize the dissemination of

her private medical information and, on or about January 11, 2019, reported a privacy violation. Ms. Schoen refused to remove the heart attack reference, despite the opinion of Celita Rivera, Privacy Officer for Appellee, that its inclusion was a privacy violation, and potentially a HIPAA violation as well, given that the FY2018 was placed on a public website. Appellee agreed to remove the reference from the FY2018 on or about February 5, 2019, but it took until February 28, 2019 until the reference was actually removed, meaning that Appellant's private medical information was visible to the general public for nearly two (2) months. (See A080).

### B. Procedural History and Rulings Presented for Review

On January 28, 2019, Appellant filed a formal charge of discrimination on the basis of gender and age, and retaliation, with the Equal Employment Opportunity Commission [hereinafter "EEOC"]. (See A038). On December 3, 2020, the EEOC entered a final order dismissing Appellant's charge. (See A038).

On or about February 6, 2021, Appellant appealed the said final order by filing a complaint with the District Court. (See A033).

On or about April 24, 2022, Appellee filed a Motion for Summary Judgment seeking the dismissal of Appellant's Complaint. (See A035).

On or about December 22, 2022, the District Court granted Appellee's Motion for Summary Judgment and dismissed Appellant's Complaint. (See A018).

On or about January 18, 2023, Appellant filed a Notice of Appeal of the said December 22, 2022 District Court Order with this Honorable Court. (See A001).

## STATEMENT OF STANDARD OF REVIEW

### A. Summary Judgment

The District Court committed an abuse of discretion, and reversible error, when it granted Appellee's Motion for Summary Judgment. An appellate court's review of a grant of summary judgment is plenary, with the appellate court applying the same test that the direct court used in determining whether summary judgment was proper. *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). Summary judgment is appropriate only when there is no genuine issue as to any material fact, and the moving party is entitled to judgment in its favor as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Cridland v. Kmart Corp.*, 929 F. Supp. 2d 377, 384 (E.D. Pa. 2013) (*quoting Anderson*, 477 U.S. at 248). In considering a motion for summary judgment, "a court does not resolve factual disputes or make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995). The

moving party bears the burden of proving that no genuine issue of material fact is in dispute. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). A genuine issue is established if a reasonable jury could return a verdict for the non-moving party based on the evidence presented. *Anderson*, 477 U.S. at 248-49. In ruling on motions for summary judgment, courts must determine "the range of permissible conclusions that might be drawn" from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596 (1986).

A party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying the aspects of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the party makes this initial showing, the burden shifts to the non-moving party to demonstrate that there is a genuine issue of material fact. *United States v. 107.9 Acre Parcel of Land in Warren Twp.*, 898 F.2d 396, 398 (3d Cir. 1990). In meeting its burden, the non-moving party is entitled to all reasonable inferences in its favor. *Pignataro v. Port Auth. of N.Y. & N.J.*, 596 F.3d 265, 268 (3d Cir. 2010). Indeed, in determining the existence of a genuine issue as to any material fact, the "court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The court must resolve all doubts as to whether a genuine issue of material fact exists in

the non-moving party's favor. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir.

2001). "If reasonable minds can differ as to the import of proffered evidence that

speaks to an issue of material fact, summary judgment should not be granted."

*Gelover v. Lockheed Martin*, 971 F. Supp. 180, 181 (E.D.Pa.1997).

## B. Discrimination

In cases sounding in discrimination, the complainant bears the initial burden

of demonstrating a *prima facie* case of discrimination. *McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792, 802 (1973). To establish a *prima facie* case of

discrimination based on sex or age, the complainant must establish that she is in

the protected group(s) and was treated less favorably than other similarly situated

employees outside her protected groups. *Davis v. Brown*, Appeal No. 01941843

(1995). Once the complainant meets this requirement, the burden then shifts to the

employer to articulate "some legitimate, nondiscriminatory reason for the"

employer's (in)actions. *McDonnell Douglas Corp.* 411 U.S. at 802. If the employer

satisfies this burden, the burden then returns to the complainant to show that the

employer's stated reason for the adverse employment (in)action is pretext. *Id* at

804. In a pretext analysis for summary judgment purposes, when an employer has

articulated a legitimate, nondiscriminatory reason for its action, a complainant may

submit either direct or circumstantial evidence, "from which a factfinder could

reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2)

believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir.1998) (*quoting Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). The complainant "need not always offer evidence sufficient to discredit all of the rationales advanced by the employer" because "the rejection of some explanations may so undermine the employer's credibility as to enable a rational factfinder to disbelieve the remaining rationales, even where the employee fails to produce evidence particular to those rationales." *Tomasso v. Boeing Co.*, 445 F.3d 702, 707 (3d Cir. 2006). Additionally, "if the [complainant] has pointed to evidence sufficient[ ] to discredit the Appellee's proffered reasons, to survive summary judgment the [complainant] need not also come forward with additional evidence of discrimination beyond his or her *prima facie* case." *Iadimarco v. Runyon*, 190 F.3d 151, 166 (3d Cir. 1999) (*quoting Fuentes*, 32 F.3d at 764).

To establish a *prima facie* case of reprisal, the complainant must show that: (1) she engaged in Title VII protected activity; (2) the agency was aware of her protected activity; (3) subsequently, she was subjected to adverse treatment by the agency; and, (4) the adverse treatment occurred within such a period of time and in such a manner that reprisal motivation may be inferred. "The causal connection [between the protected activity and the adverse action] may be shown by evidence

that the adverse action followed the protected activity within such a period of time and in such a manner that a reprisal motive is inferred." *Simens v. Reno*, Appeal No. 01941293 (1996).

Additionally, to be actionable under Title VII, a complainant must state a claim in which she suffered from an adverse employment action. An adverse employment action is an action in which an employee suffers a present harm or loss with respect to a term, condition, or privilege of employment for which there is a remedy. *Meredith v. Ashcroft*, Appeal No. 01A14290 (2002); *Harmon v. Runyon*, Appeal No. 01963903 (1996) (*citing Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972)); *see Cardenas v. Massey,* 269 F.3d 251, 263 (3d Cir. 2001).

## SUMMARY OF THE ARGUMENT

Appellant has demonstrated below that the District Court's entry of summary judgment in favor of Appellee should be reversed because Appellant was able to establish a *prima facie* case of discrimination and retaliation, and, therefore, the District Court committed an abuse of discretion, and reversible error, when it granted Appellee's Motion for Summary Judgment. Accordingly, Appellant requests that the Third Circuit remand this matter to the District Court so that it can be heard on its merits.

# **ARGUMENT**

Appellee's discriminatory conduct towards Appellant is obvious and unambiguous. It is undisputed that Appellant is part of a protected class by virtue of her age, sex, and her prior EEO activity. Appellee has undertaken numerous actions against Appellant as a result of discrimination based on these classifications. Ample evidence demonstrates that Appellant was treated in adverse and unusual ways that could only be explained by discrimination. At minimum, the evidence illustrated below sufficiently provides that there are genuine disputes of material facts—and / or the interpretation of those facts—which would have led to the District Court dismissing Appellee's Motion for Summary Judgment.

Appellee engaged in intentional discrimination against Appellant when it (1) Appellee engaged in intentional discrimination against Appellant by consistently giving her unfairly low ratings in proficiently reports and by issuing the Performance Counseling, (2) by initially refusing to include her self-evaluation as part of her FY2018, and (3) by including and then refusing to remove her medical diagnosis from her FY2018.

## **A. Appellant's Unfair Low Ratings and Performance Counseling.**

Appellant's FY2017 and FY2018 contain unfounded and/ or misconstrued criticism which portrays her in an unfairly negative light and can only be explained by discrimination, given their highly unusual nature.

In the FY2017, Mr. Boxer alleges that Appellant has difficulty working with others in a patient safety team, accuses her of collaborating against certain other employees, and cities arguments with coworkers as proof that Appellant has difficulties with interpersonal relationships; however, Appellant's alleged difficulties did not prevent her from being awarded the Gold Cornerstone Award for teamwork and outstanding compliance of all program requirements, which strongly suggests that Mr. Boxer's criticisms of Appellant have no basis in fact, but rather come as a result of discriminatory intent. (See A081).

The FY2018 noted challenges that Appellant allegedly had at a team level. For example, Ms. Schoen described issues Appellant had with holding meetings with key participants missing, and other issues with collaboration and building relationships, including demeaning and criticizing colleagues, not accepting constructive criticism, and demonstrating aggressive and hostile behavior in meetings. Although Ms. Schoen mentioned meetings held without certain participants, she neglected to mention that Appellant cannot control others to the extent of ensuring their attendance at meetings. Indeed, regarding the meetings referred to by Ms. Schoen, at least one person was unable to come due to a sick child, which is a circumstance out of Appellant's control. Despite Ms. Schoen's claims, Appellant did not exhibit hostile behavior. Appellant asserts that it was Ms.

Schoen who exhibited hostile behavior, which included being loud, aggressive, and even spitting in the face of the union representative, Theresa Heard. (See A079).

To illustrate Appellant's alleged issues with building relationships, Ms. Schoen described certain incidents. She discussed an incident in which Appellant withheld information from a colleague and criticized her work in a biting way that caused the colleague, Mary Forkin, to cry. Ms. Schoen also discussed Appellant's negative comments about the funeral of a colleague's mother. The FY2018 stated:

> "When a fellow Patient Safety Manager discussed coverage at the facility for the funeral, [Appellant] commented that '[f]or my family, anyone from work would be escorted out since its private and personal and not for curiosity. You would be escorted out since this is work and not personal life.' The funeral was for the mother of the colleague who literally saved [Appellant's] life when she had a heart attack while at work. Even though these comments represent her personal preferences, communication such as this to colleagues does not support team building or trust."

(See A079–A080). The FY2018, however, took Appellant's statements out of context. The other employee was speaking as if it was Appellant herself who died. Appellant cannot control the emotions of others. Indeed Ms. Heard testified that, in her estimation, Ms. Forkin's crying "didn't make sense" and that Appellant is not responsible for Ms. Forkin's emotional response to Appellant. (See A080).

The reality is—and evidence demonstrates—that neither the FY2017 or the FY2018 were warranted or based on any objective assessment of Appellant's performance, but rather, as a direct result of intentional discrimination of Appellant by Appellee.

Further, the only reason that the FY2018 rated Appellant with a "low satisfactory" rating was due to the existence of the Performance Counseling. Regarding Appellant's Performance Counseling, Ms. Schoen, who has been employed by Appellee for approximately ten (10) years, was serving as a Quality Management Supervisor and Risk Manager at the time of the Performance Counseling. (See A083). Over the course of her career with Appellee, Ms. Schoen had very little—if any—experience in supervision or performance counseling prior to her actions against Appellant at issue here. (See A083). Indeed, Ms. Schoen did not even know how to issue a performance counseling before doing so with Appellant. (See A083). Furthermore, Ms. Schoen had virtually no contact with Appellant prior to the events described herein and, therefore, was woefully uninformed as to how to evaluate Appellant. (See MSJ Response 9). Ms. Schoen worked with Appellant for less than a year and did not even know Appellant had a doctorate when she was issued the Performance Counseling. (See A083). She also never bothered to review any of Appellant's competency assessments, as one would expect she would, prior to issuing the Performance Counseling. (See A083). If she had, she would have seen that Appellant received an outstanding rating from her prior supervisor and, as mentioned earlier, the Cornerstone Award for teamwork and outstanding compliance of all program requirements.

14

Despite Ms. Schoen's total lack of relevant experience, she functioned as Appellant's supervisor and issued Appellant the Performance Counseling. (See A084). Although Ms. Schoen supervised multiple people, Appellant was— suspiciously—somehow the only one of her subordinates for whom she elected to recommend a performance counseling. (See A084). Ms. Schoen made the decision to issue Appellant the Performance Counseling even though she had no personal knowledge of Appellant's work product or that she had received work awards (*e.g.:* Cornerstone Award for teamwork and outstanding compliance of all program requirement). (See A084). In fact, Ms. Schoen never even took the time to review Appellant's prior performance evaluations before taking action as described herein. (See A084). Ms. Schoen treating Appellant differently from her co-workers (as Appellant was the only one for whom performance counseling was issued) is clearly an indicia of discrimination. Indeed, there is clear testimony that the only person who complained about Appellant was Ms. Schoen herself. (See A084).

Ms. Schoen's decision to issue Appellant the Performance Counseling was under the supervision of Mr. Boxer. (See A084). Notably—and quite significantly—he was a major player in Appellant's prior EEO activity, of which Ms. Schoen was well-aware when she decided to take action against Appellant. (See A084). In fact, she was aware of Appellant's other issues regarding Appellee, but ignored them and singled out Appellant for performance counseling anyway.

(See A084). Indeed, despite Mr. Boxer's involvement with Appellant's prior EEO activity, he was involved in reviewing the Performance Counseling, instead of recusing himself due to the sensitive nature of his involvement. (See A084).

Ms. Heard, who was, at the time, Vice President of the American Federation of Government Employees Union, testified that Mr. Boxer was involved with the Performance Counseling as well. (See A084). Given Mr. Boxer's involvement in Appellant's prior EEO activity, it is clear that he played a role in how she was treated by the Appellee as described herein.

Notably, Ms. Schoen was aware that there was a lot of EEO activity in her department generally, yet still decided to carelessly issue Appellant the Performance Counseling without having any experience in issuing performance counseling, without having much professional interaction with Appellant, or without having familiarity with Appellant's work product. (See A084).

Michael Samson [hereinafter Mr. Samson"] is a Quality Management specialist in behavioral health and had worked in Quality Management for about twelve (12) years at the time of the lower court proceeding. He has knowledge of Appellee, Appellant, and the matters addressed herein. (See A084). In Mr. Samson's view, Appellant was treated in an unprofessional manner by Appellee. In fact, he punctuated his view by saying in his deposition "[v]ery much so. Emphatically so, yes." (See A084). Mr. Samson observed Mr. Boxer pushing

Appellant "out of th[e] communication loop" despite Appellant having "a very huge role, an important role to play in a lot of the behavioral health processes . . ." (See A084).

Mr. Samson, an objective observer, has a starkly different view of Appellant's job performance as compared to Ms. Schoen. He stated that Appellant "does an excellent job. She's very polished and she knows what she's talking about and I think she's very good in terms of how she presents her material." (See MSJ A084). He further stated—again contrary to Ms. Schoen—that Appellant is "very professional in all the meetings [he has] attended with her" and that the only real reason why people may have an unpleasant experience with her is that Appellant holds people "accountable." (See A085).

Ms. Heard also takes a different view than that of Ms. Schoen and Appellee about Appellant. In her own review of the issues surrounding the Performance Counseling, she stated that it was clear that Appellant's work was not properly acknowledged and faced obstacles in doing her work that were out of her control. (See A085). Ms. Heard's testimony was consistent with that of Mr. Samson when she testified that Appellant could do the work assigned her. (See A085). It is also clear from Ms. Heard's testimony that Ms. Schoen's view of Appellant's work performance was not objective but came from a more personal view and/or a personal animus. (See A085). Further, despite Appellant's having "all the

answers," during the required PIP meetings, Ms. Schoen was consistently hostile toward Appellant and started arguments with her. (See A085). In Ms. Heard's estimation, Ms. Schoen did not take advantage of her meetings with Appellant to provide Appellant with any guidance on how to improve. (See A085).

Ms. Schoen's hostile attitude and demeanor toward Appellant was shared by Mr. Boxer as well. (See A085). Although Ms. Schoen made an issue of Appellant's alleged lack of interpersonal skills, it was Ms. Heard's observation that impetus for the claim that Appellant lacked interpersonal skills—the incident where Ms. Forkin cried—did not call for any sort of discipline; indeed, Ms. Forkin regretted writing up Appellant about the issue. (See A085). In fact, Ms. Forkin was "encouraged" to write up Appellant, but was not convinced that Appellant did anything wrong. (See A085). Indeed, in Ms. Heard's estimation, Ms. Forkin crying "didn't make sense," and Appellant is not responsible for Ms. Forkin's emotional responses. (See A085).

Finally, and this is hugely significant and relevant, Ms. Schoen testified that Human Relations was involved in the Performance Counseling, yet Ms. Heard made it clear that Human Relations being involved in this sort of issue was rather unusual as performance counseling normally does not come from Human Relations. (See A085). This is consistent with Ms. Schoen's testimony that Human

Relations never approached her about any other employee other than Appellant regarding performance counseling. (See A085).

Based on the foregoing, the evidence reveals that the Performance Counseling provided to Appellant was unusual, based on spurious grounds, and specifically directed to her, as opposed to other employees. Appellant asserts all of these abnormalities reflect discrimination against her on the basis of her gender, age, and/or EEO activity.

Further, Appellant's receiving the rating of "low satisfactory" is the direct result of her receiving the Performance Counseling as described above in the previous section, meaning that it, too, is a direct a result of discrimination on the basis of her gender, age, and/or EEO activity.

## B. Appellee's Refusal to Include Appellant's Self-Evaluation

Appellee's refusal to include Appellant's self-evaluation like her peers is a result of discrimination on the basis of her gender, age, and/or EEO activity.

Pursuant to the collective bargaining agreement between Appellee and Appellant, an "employee self-assessment is a critical source of employee performance information and can contribute to improved communication between supervisors and employees . . . their self-assessment/input is essential to the appraisal process." (See A087). Appellee engaged in discrimination against Appellant in that it attempted to sabotage her ability to submit a self-evaluation.

Self-evaluations are customarily submitted on an official and approved Appellee form (VA Form 10- 2633), and Appellant requested the same; however, Ms. Schoen failed, if not refused, to provide this form to Appellant, which resulted in Appellant having to prepare one herself using Microsoft Word. (See MSJ A088). Appellant submitted a timely self-evaluation on or about September 22, 2018 to be appended to her FY2018. Despite her early submission, Appellee did not include the self-evaluation with her FY2018 until well into 2019. Appellee's begrudging, belated inclusion in no way lessens the discriminatory nature of the action, as it forced Appellant to expend considerable mental and undergo unnecessary stress that could only serve negatively impact her.

The standard procedure is to include a self-evaluation—on a VA Form 10-2633—with the proficiency report when it is completed. (See A088). Appellant's being treated differently from other employees, and at variance from standard procedure, is highly unusual and clearly an indicia of discrimination. The fact that Appellee later begrudgingly included Appellant's self-evaluation does not diminish the discrimination and is evidence of Appellee's attempts to damage Appellant.

Based on the above, the evidence reveals that Appellee, in a highly unusual and suspicious decision, refused to allow Appellant to include a self-evaluation, which is standard procedure, and which Appellant asserts reflects that she was discriminated against on the basis of her gender, age, and/or EEO activity.

**C. Appellee's Inclusion of and Failure to Remove Appellant's Medical Diagnosis in Her FY2018.**

Further, the inclusion of and failure to remove Appellant's medical diagnosis in her FY2018 is a result of discrimination on the basis of her gender, age, and/or EEO activity.

Without notice or permission, Appellee—through Mr. Gainsley—knowingly and intentionally put Appellant's personal medical information into her FY2018. (See A086). Although employees of Appellee attempt to somehow parse one medical condition from another in terms of disclosure in a proficiency report, it is clear that this is a form of harassment and intimidation, and there was no warrant or reason for its inclusion. Not long after this, however, Mr. Gainsley submitted to privacy policy training. (See A086–A087). He again violated Appellant's privacy when he emailed out—through an unencrypted email—the last four digits of her Social Security number and date of birth without her permission. (See A087). Again, this is a form of harassment against Appellant as her private information should not be distributed to others without her consent. Mr. Gainsley knew, or should have known, not to disclose Appellant's medical condition and her social security number as he takes annual training for privacy issues. (See A087).

In addition to disclosing her medical information and her Social Security number without her permission, Ms. Schoen would get involved with Appellant's

health care treatment without Appellant's permission and ask Appellant invasive questions about her health despite Appellant's discomfort with the same. (See A087).

Appellee's revealing of Appellant's private information to people that are not authorized to receive it by Appellant, and/or its failure to encrypt it, exposes her to embarrassment and discomfort, not to mention the real potential of fraud due to the publication of her Social Security number. The fact that Appellee later begrudgingly removed her private medical information from the FY2018 does not diminish the discrimination and is evidence of Appellee's attempts to damage Appellant.

Based on the above, the evidence reveals that the Appellee consistently disclosed Appellant's private information without warrant or reason, and, upon notice that it had done so, failed to immediately remove it, which Appellant asserts reflects that she was discriminated against her on the basis of her gender, age, and/or EEO activity.

## **CONCLUSION**

For the reasons set forth above, Appellant respectfully requests this Honorable Court to reverse the ruling of the United States District Court for the Eastern District of Pennsylvania and permit Appellant's case to proceed.

Respectfully submitted,


/s/ Faye Riva Cohen
Faye Riva Cohen, Esquire
Attorney for Appellant


Date:  April 6, 2023

## **COMBINED CERTIFICATION**

- **BAR MEMBERSHIP**

I, Faye Riva Cohen, Esquire, hereby certify that I am licensed to practice

law in Pennsylvania and the United States Court of Appeals for the Third Circuit

Court.

- **WORD COUNT**

I, Faye Riva Cohen, Esquire, hereby certify the total number of words in the

instant Brief is 4,981 according to the Microsoft Word wordcount function.

- **SERVICE**

I, Faye Riva Cohen, Esquire, hereby certify that on the date listed below, my

Brief for Appellant and Appendix were filed electronically and are available for

viewing and downloading from the Court's Electronic Case Filing System by ECF

filers. I further certify that copies of the forgoing Brief and Appendix were served

electronically upon the following via the Court's Notice of Docket Activity:

David A. Degnan, Esquire
Assistant United States Attorney
Eastern District of Pennsylvania
615 Chestnut St., Ste. 1250
Philadelphia, PA 19106

- **IDENTICAL COMPLIANCE**

I, Faye Riva Cohen, Esquire, hereby certify that the hardcopy of the instant

Brief, and the e-filed .pdf version of the same, are identical.

- **VIRUS CHECK**

I, Faye Riva Cohen, Esquire, hereby certify that the e-filed .pdf version of the instant Brief was been scanned with AVG Anti-Virus and does not have a virus.


/s/ Faye Riva Cohen
Faye Riva Cohen, Esquire


Date: April 6, 2023

## **<u>APPENDIX VOLUME 1</u>**
## **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

NOTICE OF APPEAL ...................................................................................... A001

ORDER ......................................................................................................... A018

**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| FLORENCE KOCHER | : | |
| | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | No.  21-921 |
| | : | |
| DENIS MCDONOUGH, Secretary, | : | |
| U.S. Department Veterans Affairs, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

## <u>NOTICE OF APPEAL</u>

NOTICE is hereby given that Plaintiff Florence Kocher, above named, hereby appeals to

the UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT, from the ORDER

entered in the above matter on the 22nd day of December, 2022 by the Honorable Timothy J.

Savage. The ORDER and MEMORANDUM from which the instant appeal is taken are attached

hereto and incorporated herein as Exhibit "A".


Respectfully submitted,


/s/ Faye Riva Cohen, Esq.
FAYE RIVA COHEN, ESQUIRE
LAW OFFICE OF FAYE RIVA COHEN, P.C.
Attorney for Plaintiff/Appellant
Attorney I.D. No. 18839
2047 Locust Street
Philadelphia, PA 19103
P: 215-563-7776; F: 215-563-9996


Date:  January 18, 2023

# Exhibit "A"

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FLORENCE KOCHER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **DENIS MCDONOUGH, Secretary of** | : | |
| **Veterans Affairs, Department of** | : | |
| **Veterans Affairs** | : | **NO. 21-921** |

## ORDER

**NOW**, this 22nd day of December, 2022, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 24), the plaintiff's response, and the defendant's reply, it is **ORDERED** that the motion is **GRANTED**.

**IT IS FURTHER ORDERED** that **JUDGMENT** is entered in favor of the defendant Denis McDonough, Secretary of Veterans Affairs, Department of Veterans Affairs, and against the plaintiff Florence Kocher.

_____
TIMOTHY J. SAVAGE, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FLORENCE KOCHER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **DENIS MCDONOUGH, Secretary of** | : | |
| **Veterans Affairs, Department of** | : | |
| **Veterans Affairs** | : | **NO. 21-921** |

## MEMORANDUM OPINION

**Savage, J.**                                                                 **December 22, 2022**

In this employment discrimination action, plaintiff Florence Kocher, a 62 year-old female employed by the Veterans Affairs Medical Center in Philadelphia ("VA") as a Patient Safety Manager since 2013, asserts claims that her low performance ratings and unsatisfactory proficiency reports were the result of age and gender bias and that she was retaliated against for prior EEO activity.  Moving for summary judgment, the VA contends that Kocher has not satisfied her burden of showing a *prima facie* case of discrimination or retaliation.  It argues she has not established an adverse employment action or facts giving rise to an inference of discrimination or retaliation.

Because she did not suffer an adverse employment action and she has presented no evidence that the VA's actions were based on her age or gender, Kocher has failed to establish a *prima facie* case of employment discrimination.  Nor has she shown a causal connection between any protected EEO activity and a VA reaction that could have dissuaded a reasonable employee from making or supporting a charge of discrimination.  Therefore, we shall grant the VA's motion and enter judgment in its favor.

**Background**

Kocher's complaint may be summarized as follows. She was rated as failing in two areas in a Performance Improvement Plan in November 2018. She was given an overall rating of "low satisfactory" in her FY 2018 Proficiency Report. She was not permitted to include her self-evaluation on the same VA Form 10-2623 as her FY 2018 Proficiency Report. Her health condition was referenced in the initial version of her FY 2018 Proficiency Report. After the medical information was removed from the Report, the initial version of her Report remained in her electronic personnel file. Her second-line supervisor sent her an unencrypted email that included the Proficiency Report containing her health information as well as her partial social security number.

Tracey Schoen was Kocher's first-line supervisor throughout 2018.[1] In August 2018, in a Performance Improvement Plan ("PIP"), Schoen rated Kocher's performance as failing in two "critical dimensions" of her position: practice and collaboration.[2] Schoen iterated the standards, discussed Kocher's performance, and advised her how to improve her performance. Areas needing improvement included Kocher's preparation of the Patient Safety Annual Report, her Root Cause Analysis ("RCA")[3] presentation to VA leadership, and her collaboration with peers and colleagues within her interdisciplinary group.

After receiving the PIP, Kocher filed a grievance with the VA, arguing that the PIP

---

[1] *See* Pl.'s Statement of Undisputed Facts ¶ 2 (Doc. No. 26-2 at 3-6) ("PSUFs"); Management Affidavit of Tracy Schoen (Doc. No. 24-3).

[2] *See* PIP, dated Aug. 10, 2018 (Doc. No. 24-7); PSUFs ¶ 7.

[3] An RCA team examines health care-related adverse events and close calls, and investigates how well patient care systems function. U.S. Dep't of Veterans Affairs, Nat'l Ctr. for Patient Safety, https://www.patientsafety.va.gov/professionals/onthejob/rca.asp (last visited Dec. 21, 2022).

was procedurally defective because management had issued it without consulting her union.  In response, the VA rescinded the PIP and changed the document's name to "Proficiency Counseling."[4]  Except for the title, the document, originally dated August 10, 2018 and amended on November 1, 2018, remained unchanged.[5]

On January 11, 2019, Kocher received her FY 2018 Proficiency Report covering her performance from October 1, 2017 to September 28, 2018.  It was signed by Schoen, the rating official, and Brian Gainsley,[6] as the approving official.  Kocher was rated "Satisfactory" in "Nursing Practice," "Unsatisfactory" in "Interpersonal Relationships", and "Low Satisfactory" in the "Overall" rating.[7]  The report described problems she had conducting meetings without key participants and difficulties collaborating with team members and building relationships, including demeaning and criticizing colleagues, not accepting constructive criticism, and demonstrating aggressive, hostile behavior in meetings.  The report noted an incident where Kocher withheld information from a colleague and made her cry while criticizing her.

Kocher disagrees with Schoen's assessment.  She contends that it was Schoen— not her—who exhibited hostile behavior, including being loud, aggressive, and even spitting in the face of the union representative.  With respect to the incident with the colleague who cried, she claims Schoen took her statements out of context and

---

[4] *See* Nov. 1, 2018 Memo from Gainsley noting change of name of 8/10/18 PIP to "Proficiency Counseling" (Doc. No. 24-11).

[5] *See* Proficiency Counseling (Amended), dated Nov. 1, 2018 (Doc. No. 24-12); PSUFs ¶ 10-11.

[6] Brian Gainsley, the interim chief of Quality Management, was Kocher's second-line supervisor from July, 2018 until February 2019.  He took over for Bruce Boxer, the Chief of Quality Management, who was her second-line supervisor from January through July 13, 2018.  PSUFs ¶¶ 3-4.

[7] *See* FY 2018 Proficiency Report (Doc. No. 24-15); PSUFs ¶¶ 13-19.

disregarded the colleague's inappropriate emotional response. Kocher also notes that she cannot control who attends meetings.

Kocher also criticizes the Proficiency Report for failing to include her self-evaluation on VA Form 10-2623. Although she provided a self-evaluation prior to the issuance of the FY 2018 Proficiency Report and Schoen included it in the Report, Kocher requested that her self-evaluation be transposed onto an official VA Form 10-2623 template. Gainsley informed her that her self-evaluation could not be placed on that template because it was a time-consuming process and not required. Kocher's self-evaluation is part of her personnel file.

Another critique Kocher has of the FY 2018 Proficiency Report is that it referenced a heart attack she had had in April 2018 while at work. Because she had not given consent to Schoen or Gainsley to discuss her health condition, she complained to Celita Rivera, a Privacy Officer, that the reference to her private health information ("PHI") in her FY 2018 Proficiency Report was a privacy violation.[8] Additionally, she complained to Rivera that her second-line supervisor violated privacy rules when she sent her an unencrypted email that included the Proficiency Report containing her health information and her partial social security number. In response, the VA removed the reference to her health condition from the final Proficiency Report, and required Schoen and Gainsley to retake privacy and security training classes. About a month later, Kocher saw the earlier version of the Proficiency Report containing the PHI on her personnel electronic personnel file. The original report had been improperly scanned into her personnel file. Rivera directed HR to remove the document from the file the next day.

---

[8] *See* Documents Regarding Privacy Complaint (Doc. Nos. 24-18, 24-19, 24-20, 24-21, 24-22).

**Standard of Review**

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. FED. R. CIV. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which it bears the burden of production. *Anderson*, 477 U.S. at 252. Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

In considering the motion, we draw all reasonable inferences in the nonmovant's favor. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted). Credibility determinations, the drawing of legitimate

inferences from facts and the weighing of evidence are matters left to the jury.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

### Analysis

Because Kocher is proceeding under a pretext theory and does not present "direct evidence" of discrimination, her claims are governed by the burden-shifting *McDonnell Douglas* analysis.  *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002); *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1095, n. 4 (3d Cir. 1995).  She must first establish a *prima facie* case of discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (citations omitted); *Capps v. Mondelez Glob., LLC*, 847, F.3d 144, 151–52, 156 n.12 (3d Cir. 2017); *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008) (citation omitted).  Establishing a *prima facie* case of discrimination "is not onerous and poses a burden easily met."  *C.A.R.S.*, 527 F.3d at 365 (internal quotation marks omitted) (quoting *Tex. Dep't of Corr. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).   Under most circumstances, whether a plaintiff has established a *prima facie* case is a question of law.  *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 347 n.1 (3d Cir. 1999).

If Kocher succeeds in establishing a *prima facie* case, the burden shifts to the VA to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Willis v. UPMC Children's Hosp. of Pitts.*, 808 F.3d 638, 644 (3d Cir. 2015) (quoting *Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 412 (3d Cir. 1999)); *see also In re Trib. Media Co.*, 902 F.3d 384, 401–02 (3d Cir. 2018).  This burden is "relatively light."  *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013); *see also Bryan v. Government of Virgin Islands*, 916 F.3d 242, 248 (3d Cir. 2019) (citation omitted).  The VA can satisfy its burden by

"introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994); *see also Trib. Media Co.*, 902 F.3d at 401–02 (quoting *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 974 n.2 (3d Cir. 1998)).  The burden is one of production, not persuasion.  *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000). It is not necessary to prove that the proffered reason actually motivated its decision. *Fuentes*, 32 F.3d at 763.  It need only show that the decision could have been motivated by the proffered legitimate, non-discriminatory reason.  *Id.*; *Iadimarco v. Runyon*, 190 F.3d 151, 157 (3d Cir. 1999).

If the VA satisfies its burden, Kocher must then produce evidence from which a reasonable factfinder could conclude that the proffered reason for taking the adverse action was merely a pretext for intentional discrimination.  *Willis*, 808 F.3d at 644 (citing *Burton*, 707 F.3d at 426–27).  She may discredit the proffered reason by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons." *Id.* at 644–45 (citing *Fuentes*, 32 F.3d at 765).  She can meet her burden by producing evidence from which a factfinder could conclude that the adverse employment action was more likely than not the result of discrimination.  *Willis*, 808 F.3d at 645 (citing *Fuentes*, 32 F.3d at 764).

In other words, Kocher must offer "evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons . . . or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *In re Trib. Media Co.*,

902 F.3d at 402 (quoting *Fuentes*, 32 F.3d at 764); *see also Willis*, 808 F.3d at 644–45. The final burden of production "merges with the ultimate burden of persuading [the jury] that she has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

### Age and Sex Discrimination

To establish a *prima facie* case of intentional employment discrimination based on disparate treatment, Kocher must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) similarly situated persons who are nonmembers of the protected class were treated more favorably under circumstances giving rise to an inference of a discriminatory motive. *Willis*, 808 F.3d at 644 (citing *Burton*, 707 F.3d 4 at 426); *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (citation omitted).

It is undisputed that Kocher satisfies the first two elements. She was a 62 year-old female when the November 2018 Proficiency Counseling was issued. The VA concedes that she was qualified for her job as Patient Safety Manager. The VA disputes that she suffered an adverse employment action and that there is evidence giving rise to an inference of discrimination. With respect to retaliation, it contends there is no causal connection between any adverse action and protected activity.

### Adverse Employment Action

An "adverse employment action" under Title VII's anti-discrimination provision is "'an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)) (internal quotation marks omitted); *Moore v. Phila.*, 461 F.3d

331, 341 (3d Cir. 2006).  What qualifies as an adverse employment action is broader than the statutory definition.  It includes "'firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  *Remp v. Alcon Labs., Inc.*, 701 F. App'x 103, 106–07 (3d Cir. 2017) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  Actions that reduce opportunities for promotion or professional growth or substantially decrease an employee's earning potential can constitute adverse employment actions.  *Barnees v. Nationwide Mut. Ins. Co.*, 598 F. App'x 86, 90 (3d Cir. 2015) (citing *de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.,* 82 F.3d 16, 21 (2d Cir. 1996)); *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999).  Being placed on a performance improvement plan or receiving a written reprimand, without more, does not constitute an adverse employment action.  *Reynolds v. Dep't of the Army*, 439 F. App'x 150, 153 (3d Cir. 2011); *Mieczkowski*, 414 F. App'x at 446-47.

VA supervisors are required to counsel and evaluate their subordinates at least once annually, and issue a proficiency report, commonly referred to as an annual evaluation or annual report.  If at any time during this appraisal period "performance problems are observed which may be expected to result in a low/minimally satisfactory or unsatisfactory annual proficiency rating," the supervisor must inform the employee of the deficiencies and give her a reasonable opportunity to correct them and to demonstrate satisfactory performance before the annual report period ends.  This is accomplished by holding a counseling conference with the employee and issuing a PIP or a proficiency counseling.[9]

---

[9] *See* VA Handbook 5013, Part II at 3-4, 8-9 (Doc. No. 26-3 at 387-88, 392-93); PSUFs ¶ 12.

9

Kocher summarily contends that she was "treated in adverse and unusual ways that could only be explained by discrimination" when she was issued the November 2018 Proficiency Counseling.  She claims that Schoen had very little experience "in supervision or performance counseling," and "had virtually no contact" with Kocher prior to issuing the 2018 counseling.  If true, Schoen's inexperience suggests the reason for an inaccurate rating.  It militates against any suggestion that Schoen's rating Kocher as "Low Satisfactory" was the result of a discriminatory animus.

The issuance of the November 2018 Proficiency Counseling did not adversely affect the terms and conditions of Kocher's employment.  She was not suspended, denied a promotion, given significantly different responsibilities, or assigned less work.  Her salary was unaffected.  The counseling simply advised her about acceptable and desired conduct, informing her of deficiencies in her job performance to give her an opportunity to correct them and demonstrate satisfactory performance.  Thus, issuing the Proficiency Counseling was not an adverse employment action.

As with the 2018 performance counseling, the FY 2018 proficiency report did not result in any tangible, detrimental change to the conditions of her employment.  In her complaint, she alleges that the VA's actions caused "a loss of potential opportunity to advance" within the VA.[10]  But, she has not produced any evidence to support her speculative conclusion.  She never applied for a promotion.  Nor was she denied one.  Nor has she presented any evidence that the report will be a factor affecting her future ability to advance.

---

[10] Compl. ¶¶ 71, 75 (Doc. No. 1).

Even if the report is construed as a negative evaluation, there is no evidence that it had or will have any impact on Kocher's compensation or terms of employment. A negative evaluation, by itself, is not an adverse employment action. *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001).

Kocher is also critical of the Proficiency Report because she was not permitted to include her self-evaluation on VA Form 10-2623, even though her self-evaluation was included in the Report. Nonetheless, Kocher requested that it be transposed onto VA Form 10-2623. Gainsley informed her that it could not be placed on that template because it was a time-consuming process and not required. Because her self-evaluation is part of her personnel file, albeit not on the form Kocher preferred, there are no adverse employment consequences.

Kocher has not shown how any privacy violations resulted in a tangible, detrimental change to the conditions of her employment. After she complained about the references to her health condition, they were deleted. Schoen and Gainsley were required to take privacy and security training. Thus, there is no evidence that these disclosures adversely affected the conditions of her employment.

*Inference of Unlawful Discrimination*

Kocher has also not established the fourth element of a *prima facie* case. There is no evidence that similarly situated non-members of the protected class were treated any differently than she was. The only person Kocher identifies as a comparator is Peter Leporati, who is male and only two years younger. Other than Leporati, Kocher has not identified a younger male or female who was treated differently. Leporati was, like Kocher, a Patient Safety Manager. He was promoted to Quality Management Supervisor

in September 2017, more than one year earlier than Kocher's complained-of evaluation was issued.  Kocher did not present any evidence that Leporati was rated any differently.  Furthermore, there is no evidence that Kocher was denied a promotion.  In short, there is no evidence of disparate treatment.

Kocher contends that although Schoen supervised multiple people, she was "suspiciously, somehow the only one of her subordinates for whom she elected to recommend performance counseling."[11]  Kocher's suspicion arises from her contention that Schoen was inexperienced in supervision or performance counseling, had virtually no contact with Kocher, had no personal knowledge of her work product, and knew little about her background, including that she had a doctorate, received an outstanding rating from her prior supervisor, and received the Cornerstone Award for team work and outstanding compliance of all program requirements.

Suspicion or subjective belief is insufficient to prove a claim of discrimination.  There must be circumstances from which a reasonable juror could infer discrimination.

Kocher claims that the VA discriminated against her when it "attempted to sabotage her ability to submit a self-assessment."[12]  She contends that Schoen refused to give her an official VA Form 10-2623 to use to submit her self-assessment.  So, Kocher prepared her own self-assessment on Microsoft Word.  Even though her self-assessment was submitted on September 22, 2018, she claims that the assessment was not attached to the proficiency report until "well into 2019."[13]  She argues that this departure from

---

[11] Pl.'s Mem. of Law in Supp. of Pl.'s Resp. to Def.'s Mot. for Summ. J. at 10 (Doc. No. 26-2) ("Pl.'s Resp.").

[12] *Id.* at 13.

[13] *Id.* at 14.

standard procedure is "clearly an indicia of discrimination."[14]  Yet, she does not show how this delay adversely affected her employment.

Because Kocher's self-evaluation was attached to and acknowledged in her final proficiency report, she suffered no adverse employment consequences.  Nor was there evidence of discriminatory intent.

Kocher alleges, without evidentiary support, that Gainsley "knowingly and intentionally put [her] personal medical information into her proficiency report" and sent her an unencrypted email that included the Proficiency Report containing her health information and partial social security number as a form of "harassment and intimidation."[15]  Kocher does not explain how any of these disclosures adversely affected her employment or show that they were motivated by discriminatory intent.  There is not even a suggestion that she was targeted as an older female.

Because she suffered no adverse employment actions and she has not shown that similarly situated non-members of the protected class were treated any differently, Kocher has not made out a *prima facie* case of intentional discrimination based on her age or gender.

*Retaliation*

To succeed on a retaliation claim under Title VII, Kocher must prove: (1) she engaged in a protected activity; (2) the VA took an adverse employment action against her after or contemporaneous with her complaint; and (3) there is a causal link between her complaint and the adverse employment action.  *Daniels v. Sch. Dist. of Phila.*, 776

---

[14] *Id.*

[15] *Id.* at 12.

F.3d 181, 193 (3d Cir. 2015) (citation omitted); *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006).

It is unclear what EEO activity Kocher claims she engaged in prior to any of the actions at issue here.    Assuming Kocher did engage in protected activity, she did not suffer an adverse employment action.    Nor is there any causal connection between the actions she complains of and any protected activity.

Kocher contends that because Schoen was not knowledgeable about her background or job performance, she was influenced by Boxer, Kocher's second-line supervisor from January to July 2018, in deciding to issue the counseling.    Kocher claims that Boxer "was a major player in Plaintiff's prior EEO activity," and that Schoen was "well aware" of that when she decided to issue her November 2018 Proficiency Counseling.[16] She asserts that Boxer should have recused himself from reviewing the proficiency counseling "due to the sensitive nature of his involvement."[17]

Kocher does not identify what prior EEO activity Boxer had been involved in or when it happened.    She has not established a causal connection between any protected EEO activity and conduct by the VA that could have dissuaded a reasonable employee from making or supporting a charge of discrimination.    Thus, her retaliation claim fails.

### Conclusion

Because Kocher has not made out a *prima facie* case of intentional discrimination based on disparate treatment and has not established a retaliation claim, the VA is entitled to judgment in its favor.    Therefore, we shall grant the VA's motion.

---

[16] Pl.'s Resp. at 10.

[17] *Id.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FLORENCE KOCHER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **DENIS MCDONOUGH, Secretary of** | : | |
| **Veterans Affairs, Department of** | : | |
| **Veterans Affairs** | : | **NO. 21-921** |

## <u>ORDER</u>

**NOW**, this 22nd day of December, 2022, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 24), the plaintiff's response, and the defendant's reply, it is **ORDERED** that the motion is **GRANTED**.

**IT IS FURTHER ORDERED** that **JUDGMENT** is entered in favor of the defendant Denis McDonough, Secretary of Veterans Affairs, Department of Veterans Affairs, and against the plaintiff Florence Kocher.

_____
TIMOTHY J. SAVAGE, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FLORENCE KOCHER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **DENIS MCDONOUGH, Secretary of** | : | |
| **Veterans Affairs, Department of** | : | |
| **Veterans Affairs** | : | **NO. 21-921** |

**<u>MEMORANDUM OPINION</u>**

**Savage, J.**                                          **December 22, 2022**

In this employment discrimination action, plaintiff Florence Kocher, a 62 year-old female employed by the Veterans Affairs Medical Center in Philadelphia ("VA") as a Patient Safety Manager since 2013, asserts claims that her low performance ratings and unsatisfactory proficiency reports were the result of age and gender bias and that she was retaliated against for prior EEO activity. Moving for summary judgment, the VA contends that Kocher has not satisfied her burden of showing a *prima facie* case of discrimination or retaliation. It argues she has not established an adverse employment action or facts giving rise to an inference of discrimination or retaliation.

Because she did not suffer an adverse employment action and she has presented no evidence that the VA's actions were based on her age or gender, Kocher has failed to establish a *prima facie* case of employment discrimination. Nor has she shown a causal connection between any protected EEO activity and a VA reaction that could have dissuaded a reasonable employee from making or supporting a charge of discrimination. Therefore, we shall grant the VA's motion and enter judgment in its favor.

**Background**

Kocher's complaint may be summarized as follows.  She was rated as failing in two areas in a Performance Improvement Plan in November 2018.  She was given an overall rating of "low satisfactory" in her FY 2018 Proficiency Report.  She was not permitted to include her self-evaluation on the same VA Form 10-2623 as her FY 2018 Proficiency Report.  Her health condition was referenced in the initial version of her FY 2018 Proficiency Report.  After the medical information was removed from the Report, the initial version of her Report remained in her electronic personnel file.  Her second-line supervisor sent her an unencrypted email that included the Proficiency Report containing her health information as well as her partial social security number.

Tracey Schoen was Kocher's first-line supervisor throughout 2018.[1]  In August 2018, in a Performance Improvement Plan ("PIP"), Schoen rated Kocher's performance as failing in two "critical dimensions" of her position: practice and collaboration.[2]  Schoen iterated the standards, discussed Kocher's performance, and advised her how to improve her performance.  Areas needing improvement included Kocher's preparation of the Patient Safety Annual Report, her Root Cause Analysis ("RCA")[3] presentation to VA leadership, and her collaboration with peers and colleagues within her interdisciplinary group.

After receiving the PIP, Kocher filed a grievance with the VA, arguing that the PIP

---

[1] *See* Pl.'s Statement of Undisputed Facts ¶ 2 (Doc. No. 26-2 at 3-6) ("PSUFs"); Management Affidavit of Tracy Schoen (Doc. No. 24-3).

[2] *See* PIP, dated Aug. 10, 2018 (Doc. No. 24-7); PSUFs ¶ 7.

[3] An RCA team examines health care-related adverse events and close calls, and investigates how well patient care systems function.  U.S. Dep't of Veterans Affairs, Nat'l Ctr. for Patient Safety, https://www.patientsafety.va.gov/professionals/onthejob/rca.asp (last visited Dec. 21, 2022).

was procedurally defective because management had issued it without consulting her union.  In response, the VA rescinded the PIP and changed the document's name to "Proficiency Counseling."[4]  Except for the title, the document, originally dated August 10, 2018 and amended on November 1, 2018, remained unchanged.[5]

On January 11, 2019, Kocher received her FY 2018 Proficiency Report covering her performance from October 1, 2017 to September 28, 2018.  It was signed by Schoen, the rating official, and Brian Gainsley,[6] as the approving official.  Kocher was rated "Satisfactory" in "Nursing Practice," "Unsatisfactory" in "Interpersonal Relationships", and "Low Satisfactory" in the "Overall" rating.[7]  The report described problems she had conducting meetings without key participants and difficulties collaborating with team members and building relationships, including demeaning and criticizing colleagues, not accepting constructive criticism, and demonstrating aggressive, hostile behavior in meetings.  The report noted an incident where Kocher withheld information from a colleague and made her cry while criticizing her.

Kocher disagrees with Schoen's assessment.  She contends that it was Schoen—not her—who exhibited hostile behavior, including being loud, aggressive, and even spitting in the face of the union representative.  With respect to the incident with the colleague who cried, she claims Schoen took her statements out of context and

---

[4] *See* Nov. 1, 2018 Memo from Gainsley noting change of name of 8/10/18 PIP to "Proficiency Counseling" (Doc. No. 24-11).

[5] *See* Proficiency Counseling (Amended), dated Nov. 1, 2018 (Doc. No. 24-12); PSUFs ¶ 10-11.

[6] Brian Gainsley, the interim chief of Quality Management, was Kocher's second-line supervisor from July, 2018 until February 2019.  He took over for Bruce Boxer, the Chief of Quality Management, who was her second-line supervisor from January through July 13, 2018.  PSUFs ¶¶ 3-4.

[7] *See* FY 2018 Proficiency Report (Doc. No. 24-15); PSUFs ¶¶ 13-19.

disregarded the colleague's inappropriate emotional response.  Kocher also notes that she cannot control who attends meetings.

Kocher also criticizes the Proficiency Report for failing to include her self-evaluation on VA Form 10-2623.  Although she provided a self-evaluation prior to the issuance of the FY 2018 Proficiency Report and Schoen included it in the Report, Kocher requested that her self-evaluation be transposed onto an official VA Form 10-2623 template.  Gainsley informed her that her self-evaluation could not be placed on that template because it was a time-consuming process and not required.  Kocher's self-evaluation is part of her personnel file.

Another critique Kocher has of the FY 2018 Proficiency Report is that it referenced a heart attack she had had in April 2018 while at work.  Because she had not given consent to Schoen or Gainsley to discuss her health condition, she complained to Celita Rivera, a Privacy Officer, that the reference to her private health information ("PHI") in her FY 2018 Proficiency Report was a privacy violation.[8]  Additionally, she complained to Rivera that her second-line supervisor violated privacy rules when she sent her an unencrypted email that included the Proficiency Report containing her health information and her partial social security number.  In response, the VA removed the reference to her health condition from the final Proficiency Report, and required Schoen and Gainsley to retake privacy and security training classes.  About a month later, Kocher saw the earlier version of the Proficiency Report containing the PHI on her personnel electronic personnel file.  The original report had been improperly scanned into her personnel file. Rivera directed HR to remove the document from the file the next day.

---

[8] *See* Documents Regarding Privacy Complaint (Doc. Nos. 24-18, 24-19, 24-20, 24-21, 24-22).

**Standard of Review**

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. FED. R. CIV. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which it bears the burden of production. *Anderson*, 477 U.S. at 252. Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

In considering the motion, we draw all reasonable inferences in the nonmovant's favor. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted). Credibility determinations, the drawing of legitimate

5

inferences from facts and the weighing of evidence are matters left to the jury.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

### Analysis

Because Kocher is proceeding under a pretext theory and does not present "direct evidence" of discrimination, her claims are governed by the burden-shifting *McDonnell Douglas* analysis.  *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002); *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1095, n. 4 (3d Cir. 1995).  She must first establish a *prima facie* case of discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (citations omitted); *Capps v. Mondelez Glob., LLC*, 847, F.3d 144, 151–52, 156 n.12 (3d Cir. 2017); *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008) (citation omitted).  Establishing a *prima facie* case of discrimination "is not onerous and poses a burden easily met."  *C.A.R.S.*, 527 F.3d at 365 (internal quotation marks omitted) (quoting *Tex. Dep't of Corr. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).  Under most circumstances, whether a plaintiff has established a *prima facie* case is a question of law.  *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 347 n.1 (3d Cir. 1999).

If Kocher succeeds in establishing a *prima facie* case, the burden shifts to the VA to "articulate a legitimate nondiscriminatory reason for the adverse employment action."  *Willis v. UPMC Children's Hosp. of Pitts.*, 808 F.3d 638, 644 (3d Cir. 2015) (quoting *Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 412 (3d Cir. 1999)); *see also In re Trib. Media Co.*, 902 F.3d 384, 401–02 (3d Cir. 2018).  This burden is "relatively light."  *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013); *see also Bryan v. Government of Virgin Islands*, 916 F.3d 242, 248 (3d Cir. 2019) (citation omitted).  The VA can satisfy its burden by

6

"introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994); *see also Trib. Media Co.*, 902 F.3d at 401–02 (quoting *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 974 n.2 (3d Cir. 1998)).  The burden is one of production, not persuasion.  *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000). It is not necessary to prove that the proffered reason actually motivated its decision. *Fuentes*, 32 F.3d at 763.  It need only show that the decision could have been motivated by the proffered legitimate, non-discriminatory reason.  *Id.*; *Iadimarco v. Runyon*, 190 F.3d 151, 157 (3d Cir. 1999).

If the VA satisfies its burden, Kocher must then produce evidence from which a reasonable factfinder could conclude that the proffered reason for taking the adverse action was merely a pretext for intentional discrimination.  *Willis*, 808 F.3d at 644 (citing *Burton*, 707 F.3d at 426–27).  She may discredit the proffered reason by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons."  *Id.* at 644–45 (citing *Fuentes*, 32 F.3d at 765).  She can meet her burden by producing evidence from which a factfinder could conclude that the adverse employment action was more likely than not the result of discrimination.  *Willis*, 808 F.3d at 645 (citing *Fuentes*, 32 F.3d at 764).

In other words, Kocher must offer "evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons . . . or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *In re Trib. Media Co.*,

902 F.3d at 402 (quoting *Fuentes*, 32 F.3d at 764); *see also Willis*, 808 F.3d at 644–45. The final burden of production "merges with the ultimate burden of persuading [the jury] that she has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

### Age and Sex Discrimination

To establish a *prima facie* case of intentional employment discrimination based on disparate treatment, Kocher must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) similarly situated persons who are nonmembers of the protected class were treated more favorably under circumstances giving rise to an inference of a discriminatory motive. *Willis*, 808 F.3d at 644 (citing *Burton*, 707 F.3d 4 at 426); *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (citation omitted).

It is undisputed that Kocher satisfies the first two elements. She was a 62 year-old female when the November 2018 Proficiency Counseling was issued. The VA concedes that she was qualified for her job as Patient Safety Manager. The VA disputes that she suffered an adverse employment action and that there is evidence giving rise to an inference of discrimination. With respect to retaliation, it contends there is no causal connection between any adverse action and protected activity.

### Adverse Employment Action

An "adverse employment action" under Title VII's anti-discrimination provision is "'an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)) (internal quotation marks omitted); *Moore v. Phila.*, 461 F.3d

331, 341 (3d Cir. 2006).  What qualifies as an adverse employment action is broader than the statutory definition.   It includes "'firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  *Remp v. Alcon Labs., Inc.*, 701 F. App'x 103, 106–07 (3d Cir. 2017) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).   Actions that reduce opportunities for promotion or professional growth or substantially decrease an employee's earning potential can constitute adverse employment actions.  *Barnees v. Nationwide Mut. Ins. Co.*, 598 F. App'x 86, 90 (3d Cir. 2015) (citing *de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.,* 82 F.3d 16, 21 (2d Cir. 1996)); *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999).   Being placed on a performance improvement plan or receiving a written reprimand, without more, does not constitute an adverse employment action.  *Reynolds v. Dep't of the Army*, 439 F. App'x 150, 153 (3d Cir. 2011); *Mieczkowski*, 414 F. App'x at 446-47.

VA supervisors are required to counsel and evaluate their subordinates at least once annually, and issue a proficiency report, commonly referred to as an annual evaluation or annual report.  If at any time during this appraisal period "performance problems are observed which may be expected to result in a low/minimally satisfactory or unsatisfactory annual proficiency rating," the supervisor must inform the employee of the deficiencies and give her a reasonable opportunity to correct them and to demonstrate satisfactory performance before the annual report period ends.  This is accomplished by holding a counseling conference with the employee and issuing a PIP or a proficiency counseling.[9]

---

[9] *See* VA Handbook 5013, Part II at 3-4, 8-9 (Doc. No. 26-3 at 387-88, 392-93); PSUFs ¶ 12.

Kocher summarily contends that she was "treated in adverse and unusual ways that could only be explained by discrimination" when she was issued the November 2018 Proficiency Counseling. She claims that Schoen had very little experience "in supervision or performance counseling," and "had virtually no contact" with Kocher prior to issuing the 2018 counseling. If true, Schoen's inexperience suggests the reason for an inaccurate rating. It militates against any suggestion that Schoen's rating Kocher as "Low Satisfactory" was the result of a discriminatory animus.

The issuance of the November 2018 Proficiency Counseling did not adversely affect the terms and conditions of Kocher's employment. She was not suspended, denied a promotion, given significantly different responsibilities, or assigned less work. Her salary was unaffected. The counseling simply advised her about acceptable and desired conduct, informing her of deficiencies in her job performance to give her an opportunity to correct them and demonstrate satisfactory performance. Thus, issuing the Proficiency Counseling was not an adverse employment action.

As with the 2018 performance counseling, the FY 2018 proficiency report did not result in any tangible, detrimental change to the conditions of her employment. In her complaint, she alleges that the VA's actions caused "a loss of potential opportunity to advance" within the VA.[10] But, she has not produced any evidence to support her speculative conclusion. She never applied for a promotion. Nor was she denied one. Nor has she presented any evidence that the report will be a factor affecting her future ability to advance.

---

[10] Compl. ¶¶ 71, 75 (Doc. No. 1).

Even if the report is construed as a negative evaluation, there is no evidence that it had or will have any impact on Kocher's compensation or terms of employment. A negative evaluation, by itself, is not an adverse employment action. *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001).

Kocher is also critical of the Proficiency Report because she was not permitted to include her self-evaluation on VA Form 10-2623, even though her self-evaluation was included in the Report. Nonetheless, Kocher requested that it be transposed onto VA Form 10-2623. Gainsley informed her that it could not be placed on that template because it was a time-consuming process and not required. Because her self-evaluation is part of her personnel file, albeit not on the form Kocher preferred, there are no adverse employment consequences.

Kocher has not shown how any privacy violations resulted in a tangible, detrimental change to the conditions of her employment. After she complained about the references to her health condition, they were deleted. Schoen and Gainsley were required to take privacy and security training. Thus, there is no evidence that these disclosures adversely affected the conditions of her employment.

### *Inference of Unlawful Discrimination*

Kocher has also not established the fourth element of a *prima facie* case. There is no evidence that similarly situated non-members of the protected class were treated any differently than she was. The only person Kocher identifies as a comparator is Peter Leporati, who is male and only two years younger. Other than Leporati, Kocher has not identified a younger male or female who was treated differently. Leporati was, like Kocher, a Patient Safety Manager. He was promoted to Quality Management Supervisor

11

in September 2017, more than one year earlier than Kocher's complained-of evaluation was issued.  Kocher did not present any evidence that Leporati was rated any differently.  Furthermore, there is no evidence that Kocher was denied a promotion.  In short, there is no evidence of disparate treatment.

Kocher contends that although Schoen supervised multiple people, she was "suspiciously, somehow the only one of her subordinates for whom she elected to recommend performance counseling."[11]  Kocher's suspicion arises from her contention that Schoen was inexperienced in supervision or performance counseling, had virtually no contact with Kocher, had no personal knowledge of her work product, and knew little about her background, including that she had a doctorate, received an outstanding rating from her prior supervisor, and received the Cornerstone Award for team work and outstanding compliance of all program requirements.

Suspicion or subjective belief is insufficient to prove a claim of discrimination.  There must be circumstances from which a reasonable juror could infer discrimination.

Kocher claims that the VA discriminated against her when it "attempted to sabotage her ability to submit a self-assessment."[12]  She contends that Schoen refused to give her an official VA Form 10-2623 to use to submit her self-assessment.  So, Kocher prepared her own self-assessment on Microsoft Word.  Even though her self-assessment was submitted on September 22, 2018, she claims that the assessment was not attached to the proficiency report until "well into 2019."[13]  She argues that this departure from

---

[11] Pl.'s Mem. of Law in Supp. of Pl.'s Resp. to Def.'s Mot. for Summ. J. at 10 (Doc. No. 26-2) ("Pl.'s Resp.").

[12] *Id.* at 13.

[13] *Id.* at 14.

standard procedure is "clearly an indicia of discrimination."[14]  Yet, she does not show how this delay adversely affected her employment.

Because Kocher's self-evaluation was attached to and acknowledged in her final proficiency report, she suffered no adverse employment consequences.  Nor was there evidence of discriminatory intent.

Kocher alleges, without evidentiary support, that Gainsley "knowingly and intentionally put [her] personal medical information into her proficiency report" and sent her an unencrypted email that included the Proficiency Report containing her health information and partial social security number as a form of "harassment and intimidation."[15]  Kocher does not explain how any of these disclosures adversely affected her employment or show that they were motivated by discriminatory intent.  There is not even a suggestion that she was targeted as an older female.

Because she suffered no adverse employment actions and she has not shown that similarly situated non-members of the protected class were treated any differently, Kocher has not made out a *prima facie* case of intentional discrimination based on her age or gender.

*Retaliation*

To succeed on a retaliation claim under Title VII, Kocher must prove: (1) she engaged in a protected activity; (2) the VA took an adverse employment action against her after or contemporaneous with her complaint; and (3) there is a causal link between her complaint and the adverse employment action.  *Daniels v. Sch. Dist. of Phila.*, 776

---

[14] *Id.*

[15] *Id.* at 12.

F.3d 181, 193 (3d Cir. 2015) (citation omitted); *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006).

It is unclear what EEO activity Kocher claims she engaged in prior to any of the actions at issue here.   Assuming Kocher did engage in protected activity, she did not suffer an adverse employment action.  Nor is there any causal connection between the actions she complains of and any protected activity.

Kocher contends that because Schoen was not knowledgeable about her background or job performance, she was influenced by Boxer, Kocher's second-line supervisor from January to July 2018, in deciding to issue the counseling.  Kocher claims that Boxer "was a major player in Plaintiff's prior EEO activity," and that Schoen was "well aware" of that when she decided to issue her November 2018 Proficiency Counseling.[16] She asserts that Boxer should have recused himself from reviewing the proficiency counseling "due to the sensitive nature of his involvement."[17]

Kocher does not identify what prior EEO activity Boxer had been involved in or when it happened.  She has not established a causal connection between any protected EEO activity and conduct by the VA that could have dissuaded a reasonable employee from making or supporting a charge of discrimination.  Thus, her retaliation claim fails.

### Conclusion

Because Kocher has not made out a *prima facie* case of intentional discrimination based on disparate treatment and has not established a retaliation claim, the VA is entitled to judgment in its favor.  Therefore, we shall grant the VA's motion.

---

[16] Pl.'s Resp. at 10.

[17] *Id.*

14